# CHARLESTON.

SOUTH SIDE BANK *v.* CENTER WHEELING SAVINGS BANK.

Submitted February 25, 1914.    Decided April 7, 1914.

1.  MORTGAGES—*Deeds of Trust—Priorities.*

    A creditor in a second deed of trust having assigned the notes secured by it and subsequently purchased the property at a sale made under the first and executed his note to the creditor in the first deed of trust for the amount of his debt and secured it by a third deed of trust on the property, instead of paying it to the creditor directly or through the trustee, the debt secured by said second deed of trust is not entitled to preference over the debt secured by the third one.    (p. 61).

2.  EQUITY—*Maxims—Equal Equities—Legal Title.*

    Equities being equal, the legal title prevails.    (p. 61).

Appeal from Circuit Court, Ohio County.

Suit by the South Side Bank of Wheeling, a corporation, against the Center Wheeling Savings Bank, a corporation, and others.    From a decree for defendant, plaintiff appeals.

*Affirmed.*

*McCamic & Clarke,* for appellant.

*Russell & Russell,* for appellee.

POFFENBARGER, JUDGE:

By proper pleadings and exceptions to the report of a commissioner under a decree of reference, a question of priority

between trust deed creditors was raised in this cause, which the court decided adversely to the plaintiff.

Thomas W. Killeen, owner of the north half of Lot No. 76 of a certain section or sub-division in the city of Wheeling, and the South 25 feet of Lot No. 63 of the same sub-division, on March 7, 1904, together with his wife, executed a deed of trust conveying both parcels to a trustee, to secure the payment of their promissory note payable to themselves and endorsed in bank. On December 9, 1905, they paid $2500.00 on the note, then held by the Center Wheeling Savings Bank, reducing it to $6,500.00, and the deed of trust was released as to said north half of Lot No. 76. On October 30, 1907, they executed a second deed of trust on the parcel in Lot No. 63 to another trustee, to secure the payment of two notes for $1400.00 each and a third one for $1370.00, all payable to Waterhouse Brothers or order. These notes were pledged by Waterhouse Brothers to the Southside Bank of Wheeling, as collateral to secure a loan evidenced by their note for $4000.00, which sum was later reduced to $3800.00. Default having been made in the payment of the note secured by the first deed of trust, the property was sold by the trustee and John Waterhouse a member of the firm, became the purchaser at the price of $7500.00, executing his note for $6500.00 thereof, payable to the Center Wheeling Savings Bank and securing the same by a deed of trust on the property.

The claim of the plaintiff, the Southside Bank, for preference is founded upon a relation of confidence between Waterhouse Brothers and the plaintiff of which, it is argued, the Center Wheeling Savings Bank was bound to take notice. The contention rests not upon a legal right, but a theory founded upon equitable considerations only. On the face of the papers, the right of the savings bank is superior. Holding the first deed of trust, it caused a sale to be made, legally destroying the second deed of trust. Had Waterhouse, the purchaser, been a stranger to the property and indebtedness, he would have held the property free and discharged of the second lien. His right to do so is precluded only by his membership in the firm of Waterhouse Brothers, holding the second lien. His firm and its assignees could undoubtedly claim the benefit of his purchase. In equity, he became their

trustee, notwithstanding his purchase of the legal title. Nevertheless, in as much as he did not pay the purchase money which would have gone to the Center Bank in discharge of its debt, if he had done so, but, on the contrary, gave it his note for its debt, secured by a new deed of trust, his firm could not take the benefit of so much of the transaction as was favorable to them and repudiate the balance of it. The equity of the Center Bank is certainly as clear and strong as that of the Southside Bank and has the support of the legal title. Its deed of trust gives it a hold upon the legal title. The purpose of the bill is to break this hold upon allegations and proof of inequity in the transaction, but these allegations are met and repelled by an equity, an appeal to conscience, of equal strength on the other side; and, where equities are equal, the law prevails. The condition of the Southside Bank is not worse than it was before the sale under the first deed of trust. Had Waterhouse paid the Center Bank, its situation would have been decidedly improved, but he did not do so. Prior to that transaction, the Center Bank was admittedly a prior creditor and had undoubted right to put the property to sale and make a good title. Notwithstanding its notice of the second deed of trust and of John Waterhouse's relation to his firm and its assignee, assuming it had such notice, its right was superior, fixed and completed, and it could take additional steps, after notice, to secure it. *Hault* v. *Donahue,* 21 W. Va. 294, 300; Hogg's Equity Prin., sec. 322, p. 448.

There was not in this case, as in that of *Atkinson* v. *Plum,* 50 W. Va. 104, a release of the first deed of trust. The Center Bank held on to the legal title as security, taking a deed of trust from the purchaser whose purchase in law, annihilated the second deed of trust, leaving the holder thereof nothing but a bare equity against Waterhouse Brothers, not the Center Bank. The other authorities cited for the appellant have been examined and found inapplicable. It would be a waste of time to enter upon an analysis of them by way of demonstration of their inapplicability.

The decree is free from error and will be affirmed.

*Affirmed.*