### STROUTHERS *v.* BOGENSHUTZ.

#### Opinion delivered May 12, 1913.

GIFTS—GIFT OF LAND—DELIVERY OF POSSESSION TO DONEE.—F purchased land taking title in his own name, but the evidence showed a clear intention at the time of the purchase to make J, his brother, a gift of the same; J was put into possession of the land before the death of F. *Held,* F purchased the land intending to make a gift of the same to J, and that the gift was completed when J was invested with the possession of the land.

Appeal from Boone Chancery Court; *T. H. Humphreys,* Chancellor; affirmed.

STATEMENT BY THE COURT.

This is a suit to quiet title to thirty-two (32) acres of land in Boone County, Arkansas.

The original complaint alleges a purchase of the land from one C. M. Davey, and that the draftsman of the deed, through mistake, conveyed the land to Francis X. Bogenshutz, instead of the appellee. The appellants denied the purchase and denied that there was any mistake in the deed, and set up title in themselves, as the heirs of Francis X. Bogenshutz. They also pleaded the statute of frauds.

Charles M. Davey testified that about September, 1909, John B. Bogenshutz, of Keener, Ark., was in correspondence with him, with a view of buying the land in controversy. Later, Francis X. Bogenshutz called on the witness and said he was buying the land for his brother, John B. Bogenshutz. He did buy the land and took the deed to himself. At the time the deed was executed, Francis X. Bogenshutz told witness that he expected soon to go to Arkansas and transfer the land to his brother, John B. Bogenshutz. Witness ordered an abstract made and John B. Bogenshutz paid fifteen dollars ($15) for the abstract, which was supposed to be part of the purchase price of the land.

Witnesses on behalf of the appellee testified that they knew Francis X. Bogenshutz, who lived in Kansas City, Missouri; that they understood that Francis X. and John B. Bogenshutz, brothers, had been separated for about forty-two (42) years. When Francis found his brother John in Arkansas, he invited him to visit him in Kansas City, which he did. Witnesses testified that Francis had great affection for his brother, John B.; that Francis told witnesses that he intended to buy his brother John B. thirty-two (32) acres of land in Arkansas. He told witnesses that he had bought thirty-two (32) acres of land in Arkansas for his brother John to have a home on while he lived; that he would not have bought the land if it had not been for his brother John. He stated to witnesses that his brother John was not very well fixed

in this world's goods. It was shown by these witnesses that Francis was an old bachelor and possessed of considerable means. One of the witnesses stated that Francis told him on one occasion, when he went in to see him about buying land for his brother, John B., that he had bought him thirty-two (32) acres of land. Witness was of the impression that Francis said that he had made his brother a deed to the land. This witness stated that John B. Bogenshutz seemed to be the chief object of affection of his brother, Francis X. Bogenshutz.

The appellee testified, in part, as follows: "He was seventy-eight (78) years old. He bought the land in question in November, 1909, of C. M. Davey, of Kansas City, Missouri. He wrote Davey to get the price of the land. He wanted his brother, Francis X., to close the contract with him, but his brother was not to pay anything, but he did buy. Davey accepted $400 for the land. He wrote witness as follows:

"I wrote Cotton & Rosson to make a bill and send to you. Will you go to them and say for me that you have bought the place and will hold out $15 to pay for it? Let me know immediately, and I will deliver your deed to your brother."

After receiving this letter, witness paid fifteen dollars ($15) for the abstract. A man by the name of Rogers was in possession of the place at the time witness bought it and the grantor gave Rogers the following notice to deliver the place to witness:

"Kansas City, Mo., November 22, 1909.
"S. M. Rogers, Keener, Ark.

"Dear Sir: I have sold the place to Mr. Bogenshutz, and I wish you would relinquish possession to him, as he has paid for it and I have delivered the deed.

"C. M. Davey."

On the 9th of November, 1909, witness received the following letter from Davey:

"Dear Sir: I suppose your brother has notified you that I have contracted the place to him for you. I hope you will do well with it. I have written Mr. Rogers that

you have bought it, and wish you would get me a statement of this year's taxes and mail me at once.

"Yours truly,

"C. M. Davey."

Much of the testimony of this witness, relating to the transaction between himself and his brother, Francis X. Bogenshutz, was incompetent, and was so held to be by the chancellor, and is not set forth here. He shows, however, that his brother purchased the land and had the deed taken in his own name and that his brother sent him the deed, and when he saw that it was not in his name, witness knew that it was a mistake. Witness had the deed recorded and paid for it and sent it back to his brother. He told his brother that he thought the deed had been made in witness's name. He did not receive any other letter from his brother in regard to it. Witness's brother paid for the land, all except fifteen dollars ($15). Witness moved on the land as soon as he got the notice to Rogers to vacate, and had lived on it ever since, and had had the use of it since December, 1909. He fenced the land just before the death of his brother and after he had the deed recorded. He did not make the improvements or spend any money on the place before he had the deed recorded. Witness stated that he had nothing to do with paying money for the land, only as he had stated. His brother paid the money and sent the deed down to him for record. Witness paid out of his own money the following: Abstract, $15; taxes for the years 1909, 1910 and 1911, $12.51; and for improvements, $104.50. Witness introduced the following letter:

"Kansas City, June 23, 1910.

"Brother John: Received both of your letters asking for a loan of fifty dollars. I don't want you to get in the habit of asking loan of money from me. I am getting old and feeble, and have use of my money for myself; thinking of selling out my business and retire, and use my own money if I go broke. I have nobody that I can borrow one dollar.

"Would have answered your letter sooner, but had

another spell of sickness, same as before. Just about getting on my feet again. You have been asking me from time to time to buy that piece of ground, that you would be independent and make money. Now, as you have it, you are not doing or trying to do anything for yourself. If your wife is sick, why not her kinfolks do for her? However, I will make you a present of $20. Hope you are well, getting better. Regards to all.

"Brother Frank."

Another witness, who lived with the appellee, went with plaintiff to Kansas City to meet his brother. Witness testified as follows:

"They had not met in forty-one years, and it was the greatest meeting that ever was, I think. Francis said, 'John, I want you and your wife to come and live with me. I will deed you a piece of property I have here. If you don't want to do that, I will hire a hack and send for you to live with us or I will live with you.'"

Plaintiff and his wife would not go to Kansas City. So when Francis X. Bogenshutz came to visit his brother John, witness heard Francis say to his brother, "John, if there is any place down here that you want, I will let you have the money to pay for the place anywhere you want it. I will have all kinds of money, more than for us both. If you want any money to pay for the place, let me know and I will let you have it."

Witness heard Francis Bogenshutz say that he intended that plaintiff should have all his property at his death. He heard him say that taking the deed to himself instead of to plaintiff was a mistake in getting the deed out; that he intended to send the money to plaintiff; that it was Davey's place to have made the deed to plaintiff. Witness heard Francis Bogenshutz say that he was going back to close out his business and would prepare a deed to the plaintiff. Francis Bogenshutz told witness that he did not want land in Arkansas, that he had all he wanted. Said that he gave plaintiff money to buy the place with and that the deed was made in the name of Francis Bogenshutz by mistake.

On the trial, the appellee's complaint was treated as amended so as to allege that Francis X. Bogenshutz held the land in trust for appellee. The court found: "That Francis X. Bogenshutz purchased the land for his brother, John B. Bogenshutz, the plaintiff, paying therefor $435 out of his own money, as a present to the plaintiff, and that plaintiff paid some part of said purchase price, and that said Francis X. Bogenshutz took the deed in his own name, as trustee to John B. Bogenshutz, and not as owner thereof."

The court decreed that the title of the land be divested out of the appellants and that the same be vested in the appellee, and the case is here on appeal.

*J. W. Story,* for appellant.

1. There was no gift of money or land to the appellee. 3 Pom., Eq. Jur. (3 ed.) § 1149.

2. There was no resulting trust. *Ib.,* § 1037; 41 Ark. 391; 42 *Id.* 503; 50 *Id.* 71. Any oral agreement was within the statute of frauds.

3. A written, absolute fee simple deed can not be overturned by parol evidence, unless clear, full, unequivocal and unmistakable. 3 Pom., Eq. Jur. (3 ed.) § 1040; 71 Ark. 614; 89 *Id.* 182; 79 *Id.* 418; 72 *Id.* 75; 46 *Id.* 176; 44 *Id.* 367; 48 *Id.* 167; 101 *Id.* 451. Appellee has shown no equities and no ground of relief. 63 Ark. 100; 82 *Id.* 33; 44 *Id.* 334; 39 *Id.* 424.

4. Appellee's possession was entirely consistent with the absolute title in his brother. 82 Ark. 33; 63 *Id.* 100.

WOOD, J., (after stating the facts). The only theory upon which the appellee can be allowed the relief prayed for in this case is that his brother made him a gift of the land. We are of the opinion that the testimony showing such a gift is clear, unequivocal and convincing. Without going into detail in discussing the evidence, which is quite fully set forth in the statement, it is sufficient to say that it shows clearly that it was the intention of Francis X. Bogenshutz, who was in prosperous circum-

stances, to buy the land for his brother, John B. Bogenshutz, who was in rather destitute circumstances. The greatest affection existed between the brothers and the letters and oral testimony in the case show unmistakably that Francis Bogenshutz bought the land for his brother, John B. Bogenshutz, and gave the same to him. The notice which C. M. Davey gave to Rogers to vacate the premises and to deliver possession to the appellee must be taken as the act of Francis X. Bogenshutz, who paid to Davey the purchase money, and to whom Davey executed the deed. The land at the time of this notice was not the land of Davey, but the land of Francis X. Bogenshutz, to whom Davey had sold the same. So the investiture of possession in appellee was effected during the life of his brother, Francis X., the donor.

The letter of Francis Bogenshutz, written to his brother on June 23, 1910, in which he says, "You have been asking me from time to time to buy that piece of ground. Now, as you have it, you are not doing or trying to do anything for yourself," shows, when taken in connection with the other evidence, that Francis X. had bought the land for and had delivered same to the appellee.

The question of resulting trust has no place in the record, for the undisputed evidence shows that Francis X. Bogenshutz furnished the money with which to purchase the land, and therefore no resulting trust in favor of appellee could exist. *Hackney* v. *Butts*, 41 Ark. 393; *Gaines* v. *Cannon*, 42 Ark. 503; *Bland* v. *Talley*, 50 Ark. 71.

If these were nothing further shown than that Francis X. furnished the money to buy the land and intended thereafter to convey same to his brother, John B., then appellee's contention could not be sustained, because there would be neither an express nor resulting trust, and the statute of frauds would apply to prevent the relief sought. But, as we have stated, the evidence shows a gift, which was completed by the donor, Francis X., in delivering the possession of the land to his brother, the

appellee, with the intention of making a gift thereof to him. It was not simply a promise to give, but a completed gift. Acting under the belief that his brother had given him the land, appellee took possession thereof, and paid the taxes and made improvements thereon. See *Young* v. *Crawford,* 82 Ark. 33; *Williams* v. *Neighbors,* 155 S. W. 917, and cases there cited.

While there is no evidence to justify the finding of the court "that Francis X. Bogenshutz took the deed in his own name, as trustee of John B. Bogenshutz, and not as the owner thereof," the testimony does clearly prove that Francis X. Bogenshutz bought the land, taking the title in his own name, intending at the time to give the same to his brother, and that he afterwards carried out this intention, by investing his brother with the possession of the land, and, when he did so, he intended that his brother should have full control and dominion over it, as the owner thereof.

Even though the court was mistaken in finding that Francis X. held the land as trustee, the judgment of the court is nevertheless correct in granting the relief prayed for, and it is affirmed.